**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**BRENDA SUE LEE,**

      **Plaintiff,**

**v.**                            **Case No.: 3:11-cv-00958**

**MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,**

      **Defendant.**

**<u>MEMORANDUM OPINION</u>**

This is an action seeking review of the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying plaintiff's application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The case is presently before the Court on the parties' Motions for Judgment on the Pleadings. (ECF Nos. 11 and 12). Both parties have consented in writing to a decision by the United States Magistrate Judge. (ECF Nos. 5 and 8). The Court has fully considered the evidence and the arguments of counsel. For the reasons that follow, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

**I.**    **<u>Procedural History</u>**

Plaintiff, Brenda Sue Lee (hereinafter referred to as "Claimant"), filed for DIB and SSI on March 24, 2009, (Tr. at 140, 142), alleging disability beginning on June 1, 2005 due to "back, legs, stomach problems (undiagnosed) bad nerves, high blood pressure." (Tr. at

162). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. at 12). On September 19, 2009, Claimant filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was held on July 28, 2010 before the Honorable Charlie Paul Andrus, ALJ. (Tr. at 12, 29-55). By decision dated August 23, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-23).

The ALJ's decision became the final decision of the Commissioner on September 30, 2011 when the Appeals Council denied Claimant's request for review. (Tr. at 1-3). On December 2, 2011, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed his Answer and a Transcript of the Proceedings on February 13, 2012. (ECF Nos. 9 and 10). Thereafter, the parties filed their briefs in support of judgment on the pleadings. (ECF Nos. 11 and 12). Accordingly, this matter is ripe for resolution.

## II.     Claimant's Background

Claimant was 44 years old at the time of her alleged disability onset and was 50 years old at the time of the ALJ's decision. (Tr. at 21). She grew up in Mason County, West Virginia where she completed the tenth grade and subsequently obtained a GED. (Tr. at 34). Claimant previously worked as a personal caregiver for elderly clients and as a general laborer for several different employers. (Tr. at 163). Her past relevant employment was classified as medium to heavy, unskilled work. (Tr. at 50).

## III.    Summary of ALJ's Findings

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. See *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ determines whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second inquiry is whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If the claimant suffers from a severe impairment, the ALJ next determines whether the impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d) (the "Listing"). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). Once the RFC is established, the ALJ moves on to the fourth step, which requires an assessment of whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, the claimant has established a *prima facie* case of disability and the burden shifts to the Commissioner to present evidence to rebut a finding of disability. *McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). Under the fifth and final inquiry, the Commissioner must demonstrate that the claimant is able to perform other forms of substantial gainful activity, while taking into account the claimant's

remaining physical and mental capacities, age, education, and prior work experiences. *Id.* §§ 404.1520(g), 416.920(g); *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirement of the Social Security Act through December 31, 2008. (Tr. at 14, Finding No. 1). The ALJ found that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since June 1, 2005, the alleged date of disability onset. (*Id.*, Finding No. 2). Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of: degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), Depressive Disorder (not otherwise specified), and Generalized Anxiety Disorder. (Tr. at 14-15, Finding No. 3). The ALJ considered Claimant's complaints of hypertensive disease and abdominal distress but found these impairments to be non-severe. (Tr. at 15).

At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any impairment contained in the Listing. (Tr. at 15-17, Finding No. 4). The ALJ then found that Claimant had the following RFC:

> [L]imited to light exertion which involves lifting/carrying  of no more than twenty pounds maximum occasionally and ten pounds maximum frequently; requires sit/stand option at ½ hour intervals; no work in excessive dust/fumes; and limited to but capable of simple routine work in a lower stress setting.

(Tr. at 18-21, Finding No. 5). Under the fourth inquiry, the ALJ found that Claimant was unable to return to her past relevant employment. (Tr. at 21, Finding No. 6). Claimant was

44 years old at the time of the alleged onset of disability, which qualified her as a "younger individual age 18-49," but her age category had changed to a "person closely approaching advanced age" by the time of the hearing (Tr. at 21, Finding No. 7). Claimant had at least a high school education and could communicate in English. (Tr. at 22, Finding No. 8). The ALJ found that transferability of job skills was not an issue, because Claimant's past relevant work was unskilled. (*Id.*, Finding No. 9). Considering these factors and Claimant's RFC and relying upon the testimony of a vocational expert, the ALJ determined that Claimant could perform various jobs that existed in significant numbers in the national economy. (Tr. at 22-23, Finding No. 10). At the light exertional level, Claimant could function as a routing clerk, machine tender, and clerical machine operator. At the sedentary level, Claimant was capable of working as an inspector, security monitor, and charting clerk. On this basis, the ALJ found that Claimant was not under a disability as defined by the Social Security Act. (Tr. at 23, Finding No. 11).

## IV.   Relevant Medical Records

The Court has reviewed the Transcript of Proceedings in its entirety, including the medical records, and summarizes Claimant's treatment and evaluations to the extent they are relevant to the issues in dispute.

### A.   Treatment by or at the request of Dr. Robert Holley, Claimant's primary care physician

The first record in evidence documenting care or treatment by Dr. Robert Holley[1] is dated February 11, 2008 and reflects an office visit with Claimant. (Tr. at 373-74). At this visit, Dr. Holley administered an injection of Depo-Medrol into Claimant's right shoulder,

---

[1] The record does include two earlier reports of tests performed at the request of Dr. Holley by the Department of Radiology at Pleasant Valley Hospital. (Tr. at 396-97). On October 3, 2005 an acute abdominal series was completed to investigate the source of Claimant's abdominal pain. The series showed no evidence of any acute condition. (Tr. at 397). The following day, a gallbladder ultrasound was performed which showed a normal gallbladder without evidence of stones or disease. (Tr. at 396).

although the reason for the treatment is unclear due to the illegibility of Dr. Holley's entries.

On February 20, 2009, Claimant presented to the Emergency Department at Pleasant Valley Hospital for complaints of sore throat, nasal congestion, sinus pressure and cough. (Tr. at 260-63). Claimant reported a past medical history of hypertension. Her examination was essentially negative in all systems with the exception of a mildly inflamed throat and some costochondral tenderness. She was diagnosed with an upper respiratory infection, given an antibiotic and cough medicine, and was told to check in with Dr. Holley in 4-7 days.

A week later, Dr. Holley ordered right hip and lumbar spine x-rays of Claimant for complaints of right hip pain. (Tr. at 393-94). The films confirmed mild multilevel spurring/degenerative changes, moderate degenerative changes of the facet joints at L5-S1, and normal vertebral body and disc space height with no definite evidence of significant bone abnormality. At a follow-up office visit on March 11, 2009, Dr. Holley confirmed Claimant's diagnosis of COPD, among other conditions, and ordered a repeat gallbladder ultrasound. (Tr. at 365-66) The ultrasound was performed a week later and was interpreted to be largely unremarkable. (Tr. at 392).

On April 1, 2009, Claimant saw Dr. Stephen Rerych at Dr. Holley's request for persistent right upper quadrant abdominal pain. (Tr. at 340-41). Claimant stated that she had experienced the pain for at least ten years, and it was accompanied by occasional nausea and vomiting. She added that, over the years, she had seen physicians for the problem but had never been given a diagnosis. Claimant reported a history of cigarette abuse, arthritis, nervousness, hypertension, and bowel irregularity. Dr. Rerych performed a thorough physical examination making no abnormal findings except for tenderness in

Claimant's mid epigastrium, right upper quadrant, and left upper quadrant. Dr. Rerych found no evidence of neurological impairment, no signs of an acute abdomen, normal vital signs, and a full range of motion in all of Claimant's extremities. (*Id.*). He felt that Claimant's symptoms were atypical and required additional investigation; accordingly, he suggested an upper gastrointestinal series, followed by a scan to examine the ejection fraction of the gallbladder. The scan and upper gastrointestinal series were performed and showed a normal liver, biliary tract, gallbladder, and small bowel, but did suggest the presence of a duodenal bulb ulcer. (Tr. at 388, 390). For this reason, Dr. Rerych recommended an esophagogastroduodenoscopy ("EGD") with biopsy. (Tr. at 342).

Claimant was admitted to Pleasant Valley Hospital on April 27, 2009 for completion of the EGD. (Tr. at 336-39, 343-47). Dr. Holley took a pre-operative history and performed a physical examination. He recorded Claimant's past medical history to include COPD, hypertensive cardiovascular disease, hyperlipidemia, generalized anxiety disorder, metabolic syndrome, and irritable bowel syndrome. (Tr. at 336). When conducting the review of systems, Dr. Holley documented that Claimant complained of chronic lumbar pain radiating to her right foot, which she rated as a seven in severity on a ten point pain scale, even with the use of pain medication. She reported only being able to sit, stand, or walk for a period of five minutes. (Tr. at 337). On physical examination, Dr. Holley found Claimant to have an increased AP diameter but no rales, wheezes, rhonchi, or rubs; her cardiovascular system was essentially normal; her mood and affect were normal; and she was neurologically intact. He determined that Claimant was stable for surgery. (Tr. at 339).

Dr. Rerych performed the EGD later that day. (Tr. at 345-46). In the operative note, he documented that Claimant had no evidence of a duodenal bulb ulcer and mild "if any" antral gastritis. The surgical pathology report was equally unimpressive, showing only

some findings compatible with mild reflux disease. (Tr. at 343).

On July 15, 2009, Claimant presented to the office of Dr. Gerald McKinney of University Surgeons & Physicians. (Tr. at 330-32). Claimant was referred by Dr. Holley for a consultation related to Claimant's continued complaints of abdominal pain and nausea. Dr. McKinney performed a comprehensive physical examination and made the following findings: Claimant was alert, oriented, and in no acute distress; her neck, eyes, ears, throat, lungs, cardiovascular and nervous systems were all normal; her bowel sounds were normal; there was no swelling of her liver or spleen and no masses found in her abdomen; she had normal movement of all extremities with no swelling of the legs or deformities of the arms and legs; and her motor strength was normal. After reviewing the results of Claimant's various studies, Dr. McKinney concluded that Claimant had dyspepsia, or in nonmedical terminology, indigestion. (*Id.*). He placed her on medication to alleviate the symptoms.

The record reflects that Claimant had several contacts with Dr. Holley between November 10, 2009 and April 14, 2010; however, the records are largely illegible. (Tr. at 432-38). On April 30, 2010, Claimant had a CT scan of her chest for symptoms of cough and congestion. (Tr. at 454). The film was interpreted as stable. Pulmonary function studies performed on May 5, 2010 confirmed severe restriction likely due to Claimant's COPD. (Tr. at 455-56).

On May 17, 2010, an MRI of Claimant's lumbar spine was performed at the request of Dr. Holley. (Tr. at 452). The films were read as showing no evidence of disc herniation or neural impingement, but reflected a mild acquired canal stenosis at the L3/4 and L4/5 due to broad based annular bulging and facet arthritis.

On July 19, 2010, Dr. Holley completed a questionnaire and Medical Assessment To

Do Work-Related Activities (Physical) Form at the request of Claimant's attorney. (Tr. at 462-66). Dr. Holley opined that Claimant's subjective complaints of pain and fatigue between 6/2005 and 12/2008 were consistent with his objective findings. He felt that Claimant was incapable of engaging in full-time employment during that time frame, although he provided no supportive explanation or medical findings. He indicated that Claimant had no other impairments that limited her ability to work, but he felt that degenerative disc disease of her lumbar spine severely restricted her physical capabilities and effectively prevented her from returning to any form of employment. Dr. Holley specifically found that Claimant's condition affected her ability to lift, carry, stand, walk and sit, but offered scant details except that Claimant could not sit more than 2 hours in an eight hour workday and could not sit longer than fifteen minutes without interruption; she could only occasionally climb, stoop, crouch, and kneel, and she should never crawl.

### B.    Agency Evaluations

On May 21, 2009, Dr. A. Rafael Gomez completed a Physical Residual Function Capacity Evaluation based upon a review of the records. (Tr. at 271-78). He specifically assessed Claimant's condition as it existed prior to her date last insured for DIB; that being December 31, 2008. Based upon the dearth of available information, Dr. Gomez concluded that there was insufficient evidence to find disability prior to that date. Dr. Gomez then separately analyzed the remaining records for the period after December 31, 2008 and determined that Claimant's impairments from that date to the present were non-severe. (Tr. at 279-86). On September 9, 2009, Dr. Rabah Boukhemis completed a second review of the evidence and affirmed Dr. Gomez's conclusions.

On June 17, 2009, Claimant was evaluated by William C. Steinhoff, a Masters level psychologist, to determine the extent of her mental impairments. (Tr. at 287-93). Mr.

Steinhoff started with a clinical interview. He noted that Claimant had adequate grooming and was cooperative, although her processing was slow and she was restless. She reported that her chief complaints were pain in the right side of her chest, severe back pain, and a painful catching in her right knee, making it difficult to walk or bend. She described her mood as being mostly "bad," indicating that she slept very little, cried a lot, worried constantly, and was easy to upset. Claimant stated that she was last employed providing home care to an elderly woman and, prior to that, she had worked for twenty years as a housekeeper at a local motel. She had never been fired from any job, never supervised other employees, and never had any problems working with others. Claimant reported no mental health treatment in the past.

After completing the interview, Mr. Steinhoff performed a mental status examination and made the following findings: Claimant's eye contact was fair; her speech was clear, relevant, and coherent; she was oriented in all spheres; her mood was mildly depressed with some irritability; her judgment, immediate memory, and remote memory were normal; her recent memory, concentration, and persistence were moderately deficient; her pace and social functioning were mildly deficient; and her insight was poor. Claimant described her daily activities as minimal, indicating that her husband did most of the work around the house, although she performed her own grooming, did some laundry, watched television, and occasionally drove. Mr. Steinhoff diagnosed Claimant with depressive disorder, not otherwise specified, and generalized anxiety disorder. He felt her prognosis was guarded, although he believed she was capable of managing her own finances.

On July 11, 2009, Holly Cloonan, Ph.D. completed two Psychiatric Review Techniques and a Mental Residual Functional Capacity Assessment at the request of the

SSA. (Tr. at 294-325).  Dr. Cloonan first considered Claimant's psychiatric state prior to the date last insured for DIB, noting that there was insufficient evidence to evaluate Claimant's condition. (Tr. at 324). Turning next to Claimant's condition after December 31, 2008, Dr. Cloonan diagnosed Claimant with an affective disorder (depressive disorder) and an anxiety-related disorder (generalized anxiety disorder). (Tr. at 297, 299). Dr. Cloonan found evidence that Claimant was mildly restricted in her activities of daily living and social functioning, was moderately restricted in her ability to maintain concentration, persistence, and pace, and had no episodes of decompensation of extended duration. (Tr. at 304). Dr. Cloonan found no evidence of paragraph C criteria. (Tr. at 305). Performing a detailed function-by-function assessment, Dr. Cloonan opined that Claimant was not significantly limited in: her ability to understand and remember short, simple instructions, locations, and work-like procedures; her ability to carry out short, simple instructions; perform on schedule with regular and punctual attendance; make simple decisions; work with others; work an ordinary routine without special supervision; interact appropriately with the general public, coworkers, peers, and supervisors; ask simple questions; maintain socially appropriate behavior; appreciate hazards and take precautions; set realistic goals and make plans independently; and travel to unfamiliar places and use public transportation. Dr. Cloonan felt Claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain her concentration for long periods of time, perform at a consistent pace without interruptions from psychological symptoms, and respond appropriately to changes in the work setting. (Tr. at 308-09). In summary, Dr. Cloonan believed that Claimant was able to perform uncomplicated work-like activities in a low pressure setting and with few distractions. (Tr. at 310). Dr. Cloonan's observations and opinions were reviewed on August 29, 2009 by Dr. Debra Lilly, who

agreed with Dr. Cloonan's assessment.

## V.     Claimant's Challenges to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision. First, she argues that the ALJ failed to afford sufficient weight to the opinions of Dr. Holley given that he was Claimant's primary treating physician. (ECF No. 11 at 5-7). Second, Claimant contends that the ALJ failed to properly assess her credibility. According to Claimant, the ALJ arbitrarily disregarded her subjective complaints although the record plainly supported her contention that her symptoms were disabling. (*Id.* at 7).

In response, the Commissioner emphasizes that Claimant carries the burden of establishing disability, yet fails to provide sufficient evidence to sustain her claim. In the Commissioner's view, the ALJ properly disregarded Dr. Holley's opinion because the objective medical records contradicted his conclusions regarding the severity of Claimant's impairments. In addition, the Commissioner asserts that Dr. Holley relied heavily upon the Claimant's subjective complaints despite the fact that these complaints were often inconsistent with the medical evidence of record. (ECF No. 12 at 10-17).

## VI.    Scope of Review

The issue before this Court is whether the final decision of the Commissioner denying Claimant's application for benefits was reached by proper application of the law and is supported by substantial evidence. The Fourth Circuit has defined substantial evidence as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, the court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* Instead, the court's duty is limited in scope; it must adhere to its "traditional function" and "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the court is not whether the Claimant is disabled, but whether the decision of the Commissioner that the Claimant is not disabled is well-grounded in the evidence, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987).

This Court has considered both of Claimant's challenges in turn and finds them unpersuasive. To the contrary, having examined the record as a whole, the Court concludes that the decision of the Commissioner finding Claimant not disabled was properly reached and is supported by substantial evidence.

## VII.   Analysis

### A.      ALJ's Consideration of Dr. Holley's Opinions

Claimant contends that the Social Security regulations and rulings require the ALJ to give great deference to the opinions of a treating physician. Notwithstanding that mandate, the ALJ in this case afforded Dr. Holley's opinions little weight. Moreover, Claimant argues that the ALJ failed in his duty to provide good reasons for the limited weight given to Dr. Holley's opinions. Claimant asserts that the "lack of meaningful analysis of the medical evidence is unacceptable and should justify a reversal or remand."

(ECF No. 11 at 5).

When evaluating a claimant's application for disability benefits, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [he] receives." 20 C.F.R. §§ 404.1527(b), 416.927(b). Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions." *Id.* §§ 404.1527(a)(2), 416.927(a)(2). 20 C.F.R. §§ 404.1527(c), 416.927(c) outline how the opinions of accepted medical sources will be weighed in determining whether a claimant qualifies for disability benefits. In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *See* 20 C.F.R. § § 404.1527(c)(1), 416.927(c)(1). Even greater weight should be allocated to the opinion of a treating physician, because that physician is usually most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nevertheless, a treating physician's opinion on the nature and severity of an impairment is afforded ***controlling*** weight only if two conditions are met: (1) the opinion is well-supported by clinical and laboratory diagnostic techniques and (2) the opinion is not inconsistent with other substantial evidence. *Id.* A treating physician's opinion must be weighed against the record as a whole when determining a claimant's eligibility for benefits.

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the medical opinions of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. Generally, the more consistent a physician's opinion is with the record as a whole, the greater the weight that will be given to it. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Ultimately, it is the responsibility of the Commissioner, not the court, to evaluate the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). When a treating physician's opinion is not supported by clinical findings or is inconsistent with other substantial evidence, the ALJ may give the physician's opinion less weight, *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001), but must explain the reasons for discounting the opinion. 20 C.F.R. §§ 404.1527, 416.927. The regulations do not state with specificity the extent to which the ALJ must explain the weight given to a treating source's opinion; however Social Security Ruling 96-2p provides that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 1996 WL 374188 *5.  A minimal level of articulation is "essential for meaningful appellate review," given that "when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984) (citing *Cotter v. Harris,* 642 F.2d 700, 705 (3rd Cir. 1981)).

Medical source opinions on issues reserved to the Commissioner are treated differently than other medical source opinions; they are never entitled to controlling

weight or special significance, because "giving controlling weight to such opinions would, in effect, confer upon the [medical] source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine when an individual is disabled."[2] SSR 96-5p, 1996 WL 374183 *2. However, these opinions must always be carefully considered, "must never be ignored," and should be assessed for their supportability and consistency with the record as a whole. *Id.*

> The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d).[3]

*Id.* at *3. Although the ALJ is required to *consider* all of the evidence submitted on behalf of a claimant, "[t]he ALJ is not required to *discuss* all evidence in the record." *Aytch v. Astrue*, 686 F.Supp.2d 590, 602 (E.D.N.C. 2010) (emphasis added); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's ... alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v.*

---

[2] Examples of issues reserved to the Commissioner include "whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings ... what an individual's RFC is ... whether an individual's RFC prevents him or her from doing past relevant work ... and whether an individual [is unable to work or] is 'disabled' under the Social Security Act. . ." SSR 96-5p, 1996 WL 374183 *2.

[3] The applicable factors are now found at 20 C.F.R. §§ 404.1527(c), 416.927(c).

*Astrue*, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009).

In the present case, the ALJ clearly complied with the Social Security regulations and rulings in his treatment of Dr. Holley's opinions. Contrary to Claimant's contention, the ALJ did not reject all of Dr. Holley's statements regarding the nature and severity of Claimant's impairments. Instead, the ALJ accepted a significant portion of Dr. Holley's findings and disagreed only with Dr. Holley's conclusion that Claimant was unable to engage in any gainful employment due to extreme physical restrictions. For example, at step two of the sequential analysis, the ALJ relied largely upon Dr. Holley's notations and findings to establish Claimant's severe impairments of COPD and degenerative disc disease. (Tr. at 15). Accordingly, the ALJ reviewed and accepted Dr. Holly's opinions on these issues. Likewise, at step four, the ALJ thoroughly discussed Dr. Holley's records, first noting that Claimant's medically determinable impairments, as diagnosed by Dr. Holley, could be expected to cause the symptoms alleged by Claimant. (Tr. at 19). Once again, the ALJ accepted Dr. Holley's findings as documented in his treatment records.

Although the ALJ expressly rejected Dr. Holley's opinions pertaining to the disabling effects of Claimant's impairments, the ALJ provided a reasoned explanation for the discounted weight he gave to that assessment. The ALJ explained that the limitations described by Dr. Holley simply were not consistent with the medical records, including Dr. Holley's own notations. The ALJ emphasized that Dr. Holley appeared to base his RFC opinions upon Claimant's subjective reports rather than the objective records, which demonstrated no more than "modest findings and observations." (Tr. at 20). Looking at the treatment course prescribed by Dr. Holley for Claimant's musculoskeletal complaints, the ALJ noted that Claimant received only conservative care. Dr. Holley had not recommended more aggressive treatments, such as physical therapy, surgical intervention,

pain management, or assistive devices. The ALJ observed that, indeed, Claimant's objective findings did not support the need for more intensive treatment. Pointing to Claimant's medical imaging and physical examinations, which consistently confirmed "intact neurological status and good range of motion of all extremities," the ALJ fully discussed the medical evidence that contradicted the severity findings of Dr. Holley. The ALJ indicated that Claimant had no evidence of a gross musculoskeletal abnormality on any physical examination, as well as no evidence of focal disc herniation or significant neural impingement on medical imaging. Claimant repeatedly denied having musculoskeletal pain on the occasions that she was seen for other medical ailments. (*Id).* In addition, films of Claimant's lumbar spine showed normal disc space heights and no bony abnormalities, spondylolisthesis, or spondylosis.  Her right hip series revealed the absence of fractures, subluxation, lytic or sclerotic lesions, tendonitis, or joint space narrowing. (*Id.*).

In regard to Claimant's severe COPD, the ALJ acknowledged Dr. Holley's diagnosis, but also observed that Dr. Holley did not place any environmental restrictions on Claimant, nor did he indicate any specific lifting and carrying restrictions. (Tr. at 20). The ALJ remarked that Claimant had never required hospitalization to stabilize acute exacerbations of her chronic lung disease and her chest CT scans were stable. Pulmonary function studies confirmed respiratory obstruction, but also indicated that Claimant's lung function would improve if she ceased smoking.

The ALJ meticulously reviewed Dr. Holley's clinical records, his disability opinions, and his RFC assessment, identifying conflicts within them. Concluding that Dr. Holley's finding of disability, as well as the extreme restrictions he included in the RFC assessment form, were incompatible with Claimant's relatively benign and unimpressive clinical

findings, diagnostic testing results, and treatment course, the ALJ exercised his right to give little deference to these opinions. As previously stated, under SSR 96-5p, 1996 WL 374183 *2, opinions on issues reserved to the Commissioner, such as whether a claimant is unable to work, are not entitled to controlling weight. Similarly, opinions of treating physicians that are not well-supported by diagnostic and clinical findings or are inconsistent with other substantial evidence are not entitled to controlling weight. Instead, these opinions are assessed in relation to the record as a whole to determine their consistency and supportability. When there are inconsistencies in the record, the ALJ is charged with the duty of resolving the conflicts. If the ALJ completes this task in accordance with the applicable rules and regulations, and the ultimate finding is supported by evidence which a reasoning mind would accept as sufficient, the Court may not substitute its judgment for that of the ALJ.

Here, substantial evidence supports the ALJ's decision to discredit Dr. Holley's disability determination and RFC assessment. The medical records simply do not support the level of disability described by Dr. Holley. Moreover, the record suggests, as the ALJ found, that Dr. Holley's assessment was based almost exclusively on Claimant's subjective reports rather than on an impartial review of the medical evidence. The ALJ provided a detailed explanation for his decision. Therefore, the Court **FINDS** that the ALJ afforded appropriate weight to Dr. Holley's various findings and assessments and provided a sufficient explanation for the reduced evidentiary value he placed on Dr. Holley's disability and RFC opinions.

### B.    Credibility Assessment

Claimant also takes issue with the ALJ's credibility finding. She argues that her subjective complaints of pain and fatigue were fully supported by the RFC assessment of

Dr. Holley; therefore, she is entitled to disability benefits. In Claimant's view, the ALJ's statement that Claimant's allegations were "vague, exaggerated and inconsistent with the documented objective findings and treatment history" is entirely unwarranted in light of the "mutually supportive" statements of Claimant's "long-time primary care physician." (ECF No. 11 at 7).

In *Hines v. Barnhart,* the Fourth Circuit restated the well-established role of subjective evidence in proving the intensity, persistence, and disabling effects of pain, stating "[b]ecause pain is not readily susceptible of objective proof, however, *the absence of objective medical evidence of the intensity, degree or functional effect of pain is not determinative."* 453 F.3d at 564–565 (emphasis in original). Once an underlying condition capable of eliciting pain is established by objective medical evidence, disabling pain can be proven by subjective evidence alone. Of course, the extent to which an individual's statements can be relied upon as probative of the degree or functional effect of chronic pain depends upon the individual's credibility. "In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true." SSR 96-7p, 1996 WL 374186 *4. For that reason, the ALJ must assess and consider the credibility of the claimant when determining the weight to give to her statements regarding the intensity, degree, or functional impact of pain.

Social Security Ruling 96-7p provides practical guidance on how an ALJ should evaluate a claimant's allegation of pain and fatigue in order to determine their limiting effects on her ability to work. First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce these symptoms. SSR 96-7P. Once the ALJ finds that the conditions

can be expected to produce the symptoms, the ALJ must consider whether the intensity, persistence, and severity of the pain can be established by objective medical evidence. *Id*. Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must closely examine the claimant's statements about the disabling effects of pain and assess their reliability. The Ruling sets forth the factors that the ALJ should consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. In performing this evaluation, the ALJ must take into consideration "all the available evidence," including: the claimant's subjective complaints; claimant's medical history, medical signs, and laboratory findings;[4] any objective medical evidence of pain[5]  (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, the location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; any medical treatment taken to alleviate it; and other factors relating to functional limitations and restrictions.[6] *Craig v. Cather*, 76 F.3d 585, 595 (4th Cir. 1996). In *Hines*, the Fourth Circuit Court of Appeals stated,

> [a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

---

[4] *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

[5] *See* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2).

[6] *See* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ.

When reviewing an ALJ's credibility determinations, the court does not replace its own assessments for those of the ALJ; rather, the court reviews the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence ... or substitute its own judgment for that of the Commissioner." *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989–990 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976)).

In this case, the ALJ correctly followed the two-step process in evaluating Claimant's credibility. First, the ALJ conducted a comprehensive review of Claimant's statements, including those written in a Disability Report and Pain Questionnaire; those shared with Dr. Holley and documented in other medical records; and those made during Claimant's testimony at the administrative hearing. Considering Claimant's allegations, the ALJ accepted that Claimant's medically determinable impairments could reasonably be expected to cause her pain and fatigue; thus, completing the first step. The ALJ next evaluated the intensity, persistence, and limiting effects of Claimant's symptoms to determine the extent to which they prevented her from working. The ALJ compared and contrasted Claimant's allegations with the remaining evidence and concluded that her statements concerning the intensity, persistence, and severity of her symptoms were

exaggerated and inconsistent with the record as a whole. The ALJ stressed the complete absence of objective clinical findings and diagnostic results buttressing Claimant's descriptions of extreme and disabling pain and fatigue. Moreover, the ALJ observed that Claimant "had been rather inconsistent in her symptom and function descriptions." (Tr. at 19). He found Claimant's testimony to be embellished, indicating that she had to be prompted before she could remember some of her allegedly severe symptoms. He noted the lack of aggressive treatment recommendations from her primary and consulting physicians, as well as her unimpressive treatment history. Finally, the ALJ found Claimant's activities somewhat at odds with her complaints, pointing out that Claimant complained of debilitating COPD, yet continued to smoke against medical advice. (Tr. at 19-20). The ALJ conducted a comprehensive analysis of the relevant evidence and provided a logical basis for discrediting Claimant's overstatements. Having reviewed the Transcript of Proceedings, including the ALJ's written decision, the Court finds that the ALJ's credibility assessment of Claimant was consistent with the applicable regulations, case law, and Social Security Rulings. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Court further finds that substantial evidence exists in the record to support the ALJ's credibility finding. Claimant's complaints of pain simply do not correlate well with the objective findings in the record, her history of treatment, her current treatment course, and her documented activities.

## VIII.   Conclusion

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this

matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to counsel of record.

**ENTERED:** December 11, 2012.

Cheryl A. Eifert
United States Magistrate Judge